| CC# | DATE OF REPORT | POLICE DEPARTMENT | COMMAND | DATE OF OCCURRENCE |
|---|---|---|---|---|
| 08-1218 | July 13, 2008 | TOWN OF SOUTHAMPTON | Patrol | June 9, 2008 |

PAGE 1 of 1

**INCIDENT:** Death Investigation

**SUPPLEMENTARY REPORT**

**COMPLAINANT:** Suffolk County Homicide

**ADDRESS:**

On Monday, June 9, 2008, I was working a day tour in the B31 sector when I was ordered by Sgt. Joyce to report to 18 Greenfield Rd, Southampton and secure a door in that residence while a search warrant was being requested. On arrival I relieved PO Doherty. I stood post outside the door and did not let any person in or out of said room. While there I noticed three subjects lying on separate couches in the living room - one black male and two white females. There was also a black male who was staying in the basement of the residence who I saw come and go a couple of times. The owner of the residence, Ken Bo, was also in and out of the residence while I stood my post.

After a while PO Cagno and PO Sickles arrived to assist me. I advised PO Cagno that one of the females on the couch had what appeared to be a crack pipe in her hand. PO Cagno went to the female to get a closer look then he got PO Sickles and they both woke up the female and placed her in handcuffs. At this time the black male woke up and asked what was happening to his girlfriend. He was advised to remain on the couch and that we would speak to him in a couple of minutes. She was brought over to the dining room and placed in a chair at the dining room table. Moments later the male subject was cuffed and brought to the opposite side of the table from the female subject. While PO Cagno and PO Sickles were questioning both subjects, the male didn't answer their questions. At one point PO Peters showed up and recognized the black male subject. When PO Peters began speaking to black male subject, the subject started ducking his head below the table and I saw his jaw moving as if he was trying to eat something. Then the three other officers began to tell the subject to spit out what was in his mouth. PO Sickles told the subject several times that if he did not spit out what was in his mouth he was going to tase him. I saw PO Sickles tase him once and then I saw a clear plastic bag with a mushy white powder looking substance come out of subject's mouth and land on the table. Subject became cooperative at this time and allowed officers to check his mouth for any other items. I heard the officers ask him if he was alright and if he wanted to go to the hospital. I heard the subject say that he was fine, he had swallowed more in the past, and that he did not want to go to the hospital. A short time later subject was transported to Southampton Town Police Headquarters by PO Kiernan.

**FOUNDED:** YES
**CASE STATUS:** ACTIVE
**TELETYPE #:**
**DATE:**

**REPORTING OFFICER:** PO Steve Frankenbach #150

**SUPERVISOR:** PO 212 Desk officer

57 Howard F. Kalb

| CC# | DATE OF REPORT | POLICE DEPARTMENT | COMMAND | DATE OF OCCURRENCE |
|---|---|---|---|---|
| 08-12181 | 06-09-08 | TOWN OF SOUTHAMPTON | SCU | 07-09-08 |
| INCIDENT | | | | PAGE 1 OF 1 |
| Assist Detectives, Felony Investigation | | SUPPLEMENTARY REPORT | | |
| COMPLAINANT | ADDRESS | | | |
| P.O. Eric Sickles #190/SCU | 110 Old Riverhead Rd. Hampton Bays, N.Y. 11946 | | | |

1. Facts:

On Monday June 9th, 2008 P.O. Cagno and I responded to 18 Greenfield Rd., Southampton, N.Y. to assist P.O. Frankenbach in securing said residence for a Felony investigation being conducted by the Detectives Division. While in the residence P.O. Cagno observed two subjects sleeping in the living room area. The female subject, now known as Danielle Giannini D.O.B 09/17/81, was observed with a homemade crack pipe in her right hand. At that time I approached Giannini and identified myself as a police officer and ordered the subject to stand up so I could place her in handcuffs. At that time the male subject, who was sleeping on a separate couch woke up and asked what we were doing with his girlfriend. P.O. Frankenbach advised the male, now known as Tony Bradway D.O.B. 05/23/82 to remain on the couch. After placing Giannini under arrest both subjects were escorted into the dining area. At that time I observed a plastic bag containing an off white substance, believed to be crack cocaine on the couch where Bradway was sitting. I then advised P.O. Cagno to place Bradway in handcuffs and he did without incident. The time of arrest was 1025 hours. A short time after P.O. Peters arrived at the location and advised me that he knew Bradway from a prior incident. Bradway began acting in a suspicious manner and refusing to lift his head, while being asked his name and date of birth. P.O. Cagno observed the subject wiping a white powder substance from his mouth onto his pants. At that time P.O. Cagno asked Bradway what he had in his mouth and Bradway began to chew the substance vigorously attempting to swallow same. I then advised Bradway to spit out the substance, believed to be cocaine and after ignoring several verbal orders, Bradway continued to chew. At that time I deployed the X-26 taser, serial # X00-054571 and drive stunned Bradway in his right side, in order to prevent the subject from destroying the evidence or ingesting a lethal dose of cocaine. The drive stun caused Bradway to spit out a piece of plastic coated with cocaine. Bradway still continued chewing the substance, which now appeared to be loose in his mouth and it appeared that he was attempting to swallow same. I advised the subject that he would be tased again if he refused to comply and spit out the substance. The subject again began chewing and the taser was deployed an additional time for approximately one second to his right side, before the subject stated "ok I'll spit it out" and began to spit the substance out onto the table in front of him. Bradway then uttered to me "I just didn't want you to take my cocaine." When asked how much of the substance was ingested Bradway stated about two or three grams and that he had ingested more than that in the past. Bradway was then transported to H.Q. by P.O. William Kiernan #239 for arrest processing. While preparing to leave the residence I received a phone call from Sgt. Kiernan advising me that he wanted me to transport Bradway to the hospital for medical evaluation. At approximately 1123 hours, I arrived at H.Q. and began speaking with Bradway and Sgt. Kiernan. I advised Bradway that I was going to take him to the hospital and he stated that he did not want to go because he didn't want anyone to see him under the influence of drugs. Sgt. Kiernan advised him several times that he would have to go without fighting us and Bradway finally agreed to go willingly. At approximately 1146 hours, I transported the subject to Peconic Bay Medical Center in unit #360. I arrived at the hospital at approximately 1200 hours. Bradway advised the medical staff who were attending to him that he had swallowed about five grams of cocaine and provided them with pedigree information. After Bradway received medical attention for several hours, I spoke to Dr. Levy who advised me that Bradway would be at the hospital for at least two days. At that time I advised Sgt. Kiernan of the time frame for recovery and he advised me to release the defendant on an appearance ticket. I advised Dr. Levy that I was leaving and that I would contact him the next day. At approximately 1459 hours, I left the hospital and responded back to H.Q., where I filled out field appearance ticket #14680 and secured it with the rest of Bradway's belongings to be returned to him at a later date. The subject's pants were held as evidence and the plastic bag was recovered to be sent to the Suffolk County Lab for DNA analysis and the presence of cocaine. The quantity of crack cocaine Bradway was sitting on prior to being arrested was also sent to the Suffolk County Lab for analysis. The taser X-26 serial # X00-054571 was inspected by the department's taser instructor, Lt. William Hughes, who determined the taser is functioning in proper fashion. Then said taser was put into property as evidence.

| FOUNDED | CASE STATUS | TELETYPE # | DATE |
|---|---|---|---|
| YES | Cleared by Arrest | | |
| REPORTING OFFICER | | SUPERVISOR | |
| P.O. Eric Sickles #190/SCU | | Sgt. James Kiernan #29/SCU | |

| CC# | DATE OF REPORT | POLICE DEPARTMENT | MMAND | DATE OF OCCURRENCE |
|---|---|---|---|---|
| 08-12181 | 06-13-08 | TOWN OF SOUTHAMPTON | SCU | 06-09-08 |
| INCIDENT<br>Assist Detectives, Felony Investigation | | SUPPLEMENTARY REPORT | | PAGE 1 OF 1 |
| COMPLAINANT<br>P.O. Vincent Cagno #205/SCU | | ADDRESS<br>110 Old Riverhead Rd. Hampton Bays, N.Y. 11946 | | |

1. Facts:

On Monday June 9th, 2008, at approximately 0928 hours, P.O. Sickles and I responded to 18 Greenfield Rd., Southampton, N.Y. to assist P.O. Frankenbach in securing said residence for a Felony investigation being conducted by the Detective Division. While in the residence I observed two subjects sleeping in the living room area. The female subject, now known as Danielle Giannini D.O.B 09/17/81, was observed with a glass crack pipe on her lap. I removed the glass crack pipe from Giannini's lap and notified P.O. Sickles about the pipe. We approached Giannini and P.O. Sickles observed another drug pipe, a homemade pipe made out of a white plastic pill bottle, in Giannini's right hand. P.O. Sickles identified us as police officers and ordered the subject to stand up so I could place her in handcuffs. Giannini appeared confused and did not follow orders to stand up and place her hands behind her back. P.O. Sickles and I had to physically stand her up and place her hands behind her back in order to be handcuffed. The time of arrest was approximately 1000 hours. At that time the male subject, who was sleeping on a separate couch woke up and asked what we were doing with his girlfriend. P.O. Frankenbach advised the male, now known as Tony Bradway D.O.B. 05/23/82 to remain on the couch. After placing Giannini under arrest both subjects were escorted into the dining area and seated on opposite sides of a dining room table. As Bradway was escorted out of the living room, P.O. Sickles observed a plastic bag containing an off white substance, believed to be crack cocaine on the couch where Bradway was sitting. P.O Sickles advised me to place Bradway in handcuffs as well. I asked Bradway several times what his name was and he remained silent, refusing to talk, while placing his head on the dining room table. A short time after, P.O. Peters arrived at the location and advised us that he knew Bradway from a prior incident. Bradway began acting in a suspicious manner by lowering his head below the dining room table as I again asked his name and date of birth to confirm P.O. Peters identification. At that time I observed Bradway wiping a white powder substance from his mouth onto his pants. I asked Bradway what he had in his mouth and Bradway began to chew the substance vigorously attempting to swallow same. I then advised Bradway to spit out the substance, believed to be cocaine, and after ignoring several verbal orders, Bradway continued to chew. Upon seeing Bradway chewing and attempting to shallow what I believed to be cocaine, I placed my left hand on the back of Bradway's head and placed my right hand under Bradway's jaw and used upward pressure on the lower jaw to prevent Bradway from ingesting the cocaine. I restrained Bradway from swallowing because I feared that if he ingested the cocaine it would be hazardous to his health and I wanted to retrieve the evidence he was trying to destroy. Bradway continued to refuse orders to spit out the cocaine, at which time, P.O. Sickles told Bradway he would be tased if he did not comply. Bradway refused to comply and P.O. Sickles deployed the X-26 taser, serial # X00-054571 and drive stunned Bradway in his right side causing him to spit out a piece of plastic coated with cocaine. Bradway still continued chewing the substance, which now appeared to be loose in his mouth and it appeared that he was attempting to swallow same. P.O. Sickles advised the subject that he would be tased again if he refused to comply and spit out the substance. The subject again began chewing and the taser was deployed an additional time for approximately one second to his right side, before the subject stated "ok I'll spit it out" and began to spit the substance out onto the table in front of him. Bradway then uttered to me "I just didn't want you to take my cocaine." When asked how much of the substance he tried to eat, Bradway stated about two or three grams. He further reported that it was not a lot, meaning cocaine and that he had ingested more than that in the past. P.O. Peters retrieved an evidence bag from his police unit while I stayed with Bradway and Giannini . P.O. Peters then collected the chewed plastic bag and cocaine from the dining room table and placed it in the evidence bag, which I then took custody of. Bradway was then transported to headquarters by P.O. William Kiernan #239 for arrest processing at 1048 hours and Giannini was transported to headquarters by P.O. Montalbano for arrest processing at 1051 hours. I secured the evidence and left the residence at 1119 hours enroute to headquarters. I arrived at headquarters at 1123 hours and was assigned by Sgt. Kiernan to complete the arrest processing for Giannini.

| FOUNDED | CASE STATUS | | TELETYPE # | DATE |
|---|---|---|---|---|
| YES | Cleared by Arrest | | | |
| REPORTING OFFICER | | SUPERVISOR | | |
| P.O. Vincent Cagno #205/SCU | | Sgt. James Kiernan #29/SCU | | |