UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
Tina Bradway, Individually and as Administratrix of
the Estate of Tony Bradway,

                   Plaintiff,               Case No. CV -09-3177

     - against -

THE TOWN OF SOUTHAMPTON, LINDA A.
KABOT, OFFICER JAMES KIERNAN, OFFICER
ERIC SICKLES, OFFICER VINCENT CAGNO,
OFFICER STEVE FRANKENBACH, OFFICER
DAVID PETERS, OFFICER WILLIAM KIERNAN
and OFFICER MONTALBANO,

                   Defendants.
-----------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


                                   DEVITT SPELLMAN BARRETT, LLP
                                   Attorneys for Defendants
                                   50 Route 111
                                   Smithtown, New York 11787
                                   (631) 724-8833


Of Counsel
Joshua S. Shteierman
Jeltje deJong

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT ................................................................................................................. 4

POINT I

       PLAINTIFFS' CONSTITUTIONAL
       CLAIMS FAIL AS A MATTER OF LAW ........................................................ 6

       A.  14th Amendment – Denial of Medical Assistance ....................................... 6

       B.  Unlawful Search and Seizure ...................................................................... 8

       C.  Freedom from compelled self-incrimination ............................................... 9

       D.  The individual officers are entitled to qualified immunity ........................10

       E.  Former Town Supervisor Linda Kabot cannot be held individually
           liable as she was not personally involved in any of the alleged
           unconstitutional conduct and henceforth such claims against her
           in her official capacity are redundant ........................................................ 11

POINT II

       PLAINTIFF'S NOTICE OF CLAIM FAILS
       TO IDENTIFY VARIOUS STATELAW CLAIMS
       ALLEGED IN THE FEDERAL COMPLAINT
       AND THEREFORE MUST BE DISMISSED ...................................................12

POINT III

       PLAINTIFFS' NEGLIGENCE CLAIMS
       SHOULD BE DISMISSED ...............................................................................15

       a.  Officers' Negligence ................................................................................... 15

       b.  Town's Negligence ...................................................................................... 16

       c.  Negligent Hiring/Retention/Training ......................................................... 18

**POINT IV**

**THE PLAINTIFF HAS NOT ESTABLISHED THAT BRADWAY'S DEATH WAS CAUSED BY THE CONDUCT OF THE DEFENDANTS**.................................................20


**CONCLUSION** ................................................................................................22

## Cases

Amato v. City of Saratoga Springs,
    170 F.3d 311 (2d Cir. 1999)..............................................................................12

Anderson v. Creighton,
    483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed. 523 (1987).......................................10

Ashley v. City of New York,
    7 A.D.3d 742, 779 N.Y.S.2d 502 (2d Dept. 2004) ..........................................18

Bickerstaff v. Vassar College,
    196 F.3d 435 (2d Cir. 1999).......................................................................6, 21

Brown v. Mississippi,
    297 U.S. 278, 56 S.Ct. 461, 80 L.Ed.2d 682 (1936).......................................10

Bryant v. City of New York,
    188 A.D.2d 445, 590 N.Y.S.2d 913 (2d Dept. 1992) ......................................12

C.M. v. City of New York,
    9 Misc.3d 251, 800 N.Y.S.2d 898 (New York Sup. 2005)...............................19

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..........................................................................................5

Chavez v. Martinez,
    538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)..................................10

Chieffet v. New York City Transit Authority,
    10 A.D.3d 526, 782 N.Y.S.2d 56 (1st Dept. 2004)..........................................12

Chong v. New York City Transit Authority,
    83 A.D.2d 546, 441 N.Y.S.2d 24 (2d Dept. 1981) ..........................................20

Cifarelli,
    93 F.3d 47 (2d Cir. 1996).................................................................................21

Cooper v. City of Hartford,
    2009 WL 2163127 (D. Conn. 2006) ..................................................................7

Daniels v. Loizzo,
    174 FRD 295 (S.D.N.Y. 1997) ........................................................................19

DeJesus v. New York City Housing Authority,
    46 A.D.3d 474, 848 N.Y.S.2d 641 (1st Dept. 2007)........................................13

Delong v. Soufiane,
    2010 WL 234781 (E.D.N.Y. 2010)...................................................................12

Demorcy v. City of New York,
    137 A.D.2d 650, 524 N.Y.S.2d 742 (2d Dept. 1988) ...................................................... 12

Diaz v. City of New York,
    2006 WL 3833164 (E.D.N.Y. 2006)................................................................................ 19

Dineen ex rel. Dineen v. Stramka,
    228 F.Supp.2d 447 (S.D.N.Y.2002)................................................................................ 21

Dister v. Continental Group, Inc.,
    859 F.2d 1108 (2d Cir. 1988)........................................................................................... 5

Doona v. OneSource Holdings, Inc.,
    680 F.Supp.2d 394 (E.D.N.Y. 2010) ............................................................................... 5

Eberts v. Makarczuk,
    52 A.D.3d 772, 861 N.Y.S.2d 731 (2008) ...................................................................... 21

Feurtado v. Gillespie,
    2005 WL 3088327 (E.D.N.Y. 2005)................................................................................. 9

Gauthier v. Town of Bethlehem, New York,
    1993 WL 489684 (N.D.N.Y. 1993) ............................................................................... 20

Gordon v. City of New York,
    120 A.D.2d 562, 502 N.Y.S.2d 215 (2d Dept. 1986) ................................................ 16, 17

Harlen Assocs. v. Incorporated Vill. Of Mineola,
    273 F.3d 494 (2d Cir. 2001)............................................................................................. 5

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)............................................. 10, 11

Herron v. City of New York,
    223 A.D.2d 676, 637 N.Y.S.2d 438 (2d Dept. 1996) ..................................................... 12

Hiller v. County of Suffolk,
    81 F.Supp.2d 420 (E.D.N.Y. 2000) ............................................................................... 20

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)........................................................................................... 11

Jones v. Rensselear,
    51 A.D.3d 1073, 856 N.Y.S.2d 717 (3d Dept. 2008) ..................................................... 16

Karoon v. New York City Transit Authority,
    241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dept.1997)................................................... 18, 19

Lenti v. Cohen,
    16 NY2d 796, 262 NYS2d 961 (1965) ........................................................................... 21

Malley v. Briggs,
    475 U.S. 334, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)................................................... 10

McClean v. City of New York,
    12 N.Y.3d 194 (2009) .............................................................................................. 10, 16

Mills v. Fenger,
  216 Fed.Appx. 7 (2d Cir. 2006) ............................................................... 6

Mon v. New York,
  78 N.Y.S.2d 309, 574 N.Y.S.2d 529 (1991) ........................................ 19, 20

Moore v. County of Rockland,
  192 A.D.2d 1021, 596 N.Y.S.2d 908 (3d Dept. 1993) .............................. 12

Morales v. Mackalm,
  278 F.3d 126 (2d Cir. 2002) ................................................................... 7

Muset v. Ishimaru,
  2011 WL 1752167 (E.D.N.Y. 2011) ......................................................... 5

Nance v. New York City Police Dep't ex rel McKaw,
  2003 WL 1955164 (E.D.N.Y 2003) ...................................................... 6, 7

Nealy v. U.S. Surgical Corp.,
  587 F.Supp.2d 579 (S.D.N.Y. 2008) ....................................................... 21

Nogbou v. Mayrose,
  400 Fed. Appx. 617 (2d. Cir. 2010) ......................................................... 8

Noseworthy v. City of New York,
  298 N.Y. 76 (1948) .............................................................................. 21

Palsgraf v. Long Island R.R. Co.,
  248 N.Y. 339 ....................................................................................... 17

Pennsylvania Bd. of Probation & Parole v. Scott,
  524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) ............................. 9

R.B. Ventures Ltd. v. Shane,
  112 F.3d 54 (2d Cir. 1997) ..................................................................... 4

Rattner v. Planning Com'n of Vil. of Pleasantville,
  156 A.D.2d 521 (2d Dept 1989) ............................................................. 15

Reeves v. Johnson Controls,
  140 F.3d 144 (2d Cir. 1998) ................................................................... 5

Rollins v. New York City Bd. of Educ.,
  68 A.D.3d 540, 889 N.Y.S.2d 456 (1st Dept. 2009) ............................... 13

Rucker v. Fifth Ave. Coach Lines, Inc.,
  15 N.Y.2d 516, 254 N.Y.S.2d 97 (1965) ................................................ 21

Ryan v. Department of Social Services,
  16 Misc.3d 1134(A), 847 N.Y.S.2d 904 (N.Y. Sup. 2007) ......................... 10

Sanchez v. State,
  99 N.Y.2d. 247, 754 N.Y.S.2d 621 (2002) ............................................. 16

Santoro v. Town of Smithtown,
  40 A.D.3d 736, 835 N.Y.S.2d 658 (2d Dept. 2007) ................................. 13

Segal v. St. John's University,
    69 A.D.3d 702, 893 N.Y.S.2d 221 (2d Dept. 2010) ........................................ 18

Stern v. Trustees of Columbia University in City of New York,
    131 F.3d 305 (2d Cir. 1997)............................................................................. 6

Swift v. Toia,
    450 F. Supp. 983 (S.D.N.Y. 1978) ................................................................. 14

Tango v. Tulevech,
    61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983)................................ 19

Texas v. Brown,
    460 U.S. 730, 103 S. Ct. 1535, 75 L.Ed.2d 502 (1983)................................... 9

Torres v. New York City Housing Authority,
    261 A.D.2d 273, 690 N.Y.S.2d 257 (1st Dept. 1999)....................................... 12

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1998).............................................................................. 9

U.S. v. Calandra,
    414 U.S. 338 (1973).......................................................................................... 9

U.S. v. U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,00),
    455 F. Supp.2d 145 (E.D.N.Y. 2007) .............................................................. 5

United National Ins. Co. v. The Tunnel Inc.,
    988 F.2d 351 (2d Cir. 1993)............................................................................. 5

United States v. Verdugo-Urquidez,
    494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990)................................. 10

Urena v. City of New York,
    221 A.D.2d 429, 633 N.Y.S.2d 391 (2d Dept. 1995) ...................................... 13

Wernick v. Federal Reserve Bank of New York,
    91 F.3d 379 (2d Cir. 1996)............................................................................... 6

Western World Ins. Co. v. Stack Oil Inc.,
    922 F.2d 118 (2d Cir. 1990)......................................................................... 5, 21

Weyant v. Okst,
    101 F3d 845 (2d Cir 1996).............................................................................. 7, 8

White v. New York City Housing Authority,
    288 A.D.2d 150, 734 N.Y.S.2d 11 (1st Dept. 2001)................................... 12, 15

Witkowich v. U.S. Marshals Service,
    2011 WL 2117614 (2d. Cir. 2011).................................................................. 5, 6

Wright v. Smith,
    21 F.3d 496 (2d. Cir. 1994)............................................................................. 11

## Statutes

Estates Power and Trusts Law §5-4.1 ............................................................................................. 20

General Municipal Law Sec. 50-e(6) ............................................................................................. 12

N.Y. Gen. Mun. Law § 50-e(1)(b) ............................................................................................. 14

## Rules

Fed.R.Civ.P. 56 ............................................................................................................................. 4

Fed.R.Civ.P. 56(c) ......................................................................................................................... 5

## PRELIMINARY STATEMENT

Tony Bradway was arrested on June 9, 2008 for possession of crack/cocaine. After being placed in custody and transported to police headquarters, Bradway was taken to Peconic Bay Medical Center. After being in the hospital for approximately seven hours, Bradway was pronounced dead as a result of acute cocaine intoxication. Bradway's estate brings the instant action claiming deprivations of various constitutional rights, conspiracy, assault, battery, intentional infliction of emotional distress, malicious abuse of process, negligence and wrongful death. (Amended Complaint, Exhibit A)[1]. On May 20, 2011, plaintiff, by stipulation discontinued the claims of excessive force, equal protection, conspiracy, assault, battery, intentional infliction of emotional distress, malicious abuse of process and any claims arising under the New York State Constitution. The remaining claims appear to be negligence, wrongful death, and claims arising under the Fourth, Fifth and Fourteenth Amendment. Defendants served and filed an answer which includes the affirmative defense of qualified immunity. (Answer, Exhibit B).

Defendants bring this motion for summary judgment, requesting that all of plaintiff's claims be dismissed with prejudice. The following Memorandum of Law is submitted in support of defendants' motion.

## STATEMENT OF FACTS

On June 9, 2008, Officers Steven Frakenbach, Vincent Cagno, and Eric Sickles were assigned to secure the residence located at 18 Greenfield Road, Southampton, New York, for a felony investigation being conducted by the detective division. (Exhibit "C"). Kenneth Bo, the

---

[1] Exhibits referred to herein are annexed to the declaration of Joshua S. Shteierman, submitted in support of the motion for summary judgment.

owner of the residence consented to the Officers' presence and to any search they deemed necessary. (Exhibit "D"). At approximately 0940 hours, while at the premise, Officer Frankenbach observed a woman, Danielle Giannini, sleeping on a couch in the living room with a "crack pipe" in her hand. (Exhibit "E", p. 16:5-10). Tony Bradway (hereinafter "Bradway") was also asleep on a separate couch. Officer Frankenbach alerted Officer Sickles to the contraband in Ms. Giannini's hand and he, in turn, arrested her and escorted her into the dining room. (Exhibit "F", p. 53:2-5). As Officer Cagno was escorting Ms. Giannini into the dining room, Bradway awoke and he was also escorted into the dining room. (Exhibit "F", p. 55:20-23). On the couch where Bradway was sitting, Officer Sickles observed a "knotted plastic baggy" containing a white powder which appeared to be, and was later confirmed to be, crack cocaine. (Exhibit "F", p. 56:23-25). At that point, Officer Cagno arrested Bradway and placed him in handcuffs. (Exhibit "G", p. 32:23).

After the cocaine was discovered, Officer Cagno repeatedly attempted to obtain Bradway's pedigree information, however he would not respond. (Exhibit "G", p. 34:3-22). Approximately (5) five minutes after Bradway was placed in handcuffs, Officer Cagno observed him wipe his mouth directly on his pant leg and noticed a white residue; he then observed Bradway chewing on something. (Exhibit "G", p. 38:9-12). Officer Cagno immediately commanded Bradway to spit out whatever was in his mouth. (Exhibit "G", p. 38:9-12). Because Bradway continually refused to comply with Officer Cagno's commands, Cagno placed his left hand behind Bradway's head and his right hand under his chin in an attempt to prevent him from swallowing the substance in his mouth. (Exhibit "G", p. 38:17-21). Officer Sickles was also commanding Bradway to stop chewing and eventually informed him that if he did not comply he would be 'tased'. (Exhibit "F", p. 66:14-18). Bradway continued to disregard the commands of

the officers. Officer Sickles, certified in the use of the TASER, deployed the TASER in 'drive-stun' mode. (Exhibit "F", p. 66:24-25); (Sickles TASER Certification, Exhibit "H"). In response, Bradway spit out a plastic bag onto the table in front of him but continued to chew. Exhibit "F", p. 68: 7-10). Bradway was again directed to spit out whatever it was he was chewing, or he would be 'tased'. (Exhibit "F", p. 68: 7-10). Bradway again refused to comply and in fact began to chew more vigorously, at which point Officer Sickles used the TASER and drive-stunned Bradway a second time. (Exhibit "F", p. 68: 21-23). Bradway then spit out a white substance onto the table at which he was seated. (Exhibit "F", pp. 68: 21-23; 69:2-3).

Officer Sickles radioed his supervisor, Sgt. James Kiernan, to advise him of what just occurred. (Exhibit "F", p. 73:3-8). Sgt. Kiernan asked what condition Bradway was in and when he was informed that Bradway appeared fine and not in any distress, he directed that Bradway be brought to police headquarters. (Exhibit "F", p. 73:11-13). Officer Frankenbach recalled asking Bradway how he felt and whether he wanted to go to the hospital. (Exhibit "E", p. 31:13-17). Bradway was adamant that he felt fine and did not want to go to the hospital. (Exhibit "E", p. 31:18-20). As Officer Sickles escorted Bradway to the patrol car, Bradway again stated that he felt fine and did not want to go to the hospital because his family worked there. (Exhibit "F", p. 79:16-20). Officer William Kiernan transported Bradway to police headquarters and recalled that Bradway appeared to be in normal condition. (Exhibit "I", p. 32:2-14).

Sgt. James Kiernan conducted the arrest processing of Bradway when he arrived at police headquarters at approximately 1045. (Exhibit "J", p. 33:4-7; Exhibit "K"). Sgt. Kiernan took Bradway's pedigree information, name, date of birth, address, relatives, etc. and recalls Bradway appearing to be in normal physical and mental condition and not under the influence of any narcotic. (Exhibit "J", p. 33:3-25). However, during the course of Sgt. Kiernan's interview of

Bradway, he began to notice that Bradway was giving inconsistent answers. (Exhibit "J", p. 34:2-5). Accordingly, Sgt. Kiernan made a decision that it was in Bradway's best interest to be taken to the hospital and he directed Officer Sickles to do so. (Exhibit "J", p. 34:2-5). Bradway initially protested stating that he did not want to go to the hospital and it was his right not to go, but he eventually complied. (Exhibit "J", p. 36:13-25).

Bradway was admitted to Peconic Bay Medical Center at 1204. (Exhibit "L"). Upon his arrival, Bradway informed the triage nurse that he had ingested (4) four to (5) five grams of cocaine seven hours earlier in an attempt to get high and that he ingests 10 grams of cocaine daily. (Exhibit "L"). The initial assessment of Bradway taken at 1400 hours indicated that while Bradway was agitated and uncooperative and had an elevated heart rate, he was not in respiratory distress, was oriented, had no evidence of trauma and overall appeared well. (Exhibit "L"). At approximately 1545, doctors for the first time made note of Bradway experiencing "seizure activity". (Exhibit "M"). From this point forward, Bradway's health declined. At approximately 1815, Bradway was transferred to the ICU for treatment of acute respiratory failure secondary to acute cocaine intoxication. (Exhibit "M"). At approximately 1853 a code blue was called when no electrical current was detected in Bradway's heart and he was pronounced dead at 1913. (Exhibit "M").

## ARGUMENT

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Fed.R.Civ.P. 56, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." R.B. Ventures Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997)

*quoting*, Fed.R.Civ.P. 56(c); <u>Doona v. OneSource Holdings, Inc.</u>, 680 F.Supp.2d 394, 399 (E.D.N.Y. 2010). Rule 56(c) mandates "the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Reeves v. Johnson Controls</u>, 140 F.3d 144 (2d Cir. 1998) <u>quoting</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. <u>Witkowich v. U.S. Marshals Service</u>, 2011 WL 2117614 (2d. Cir. 2011); <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1114 (2d Cir. 1988).

In this Circuit, "summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." <u>United National Ins. Co. v. The Tunnel Inc.</u>, 988 F.2d 351, 355 (2d Cir. 1993); <u>U.S. v. U.S. Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,00)</u>, 455 F. Supp.2d 145, 155 (E.D.N.Y. 2007). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See* <u>Muset v. Ishimaru</u>, 2011 WL 1752167 (E.D.N.Y. 2011); <u>Western World Ins. Co. v. Stack Oil Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990). Furthermore, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." <u>Dister</u>, 859 F.2d at 1114.

Additionally, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. <u>Harlen Assocs. v. Incorporated Vill. Of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001). Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defect a properly supported motion for summary judgment. <u>Witkowich v. U.S.</u>

Marshals Service, 2011 WL 2117614 (2d. Cir. 2011); Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999). Moreover, "[t]he mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient." Stern v. Trustees of Columbia University in City of New York, 131 F.3d 305, 315 (2d Cir. 1997); *accord* Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 382 (2d Cir. 1996).

## POINT I

## PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW

### A. 14th Amendment – Denial of Medical Assistance:

Although not explicitly alleged, plaintiff's amended complaint appears to infer that Bradway's constitutional rights were violated when the officers initially denied him medical assistance. It appears that in this circuit, claims arising prior to actual conviction or even arraignment are assessed under the Fourteenth Amendment. *See* Mills v. Fenger, 216 Fed.Appx. 7, 10 (2d Cir. 2006) (holding that such claims when they occur in the course of pretrial arrest and detainment are evaluated under the Due Process Clause of the Fourteenth Amendment); Nance v. New York City Police Dep't ex rel McKaw, 2003 WL 1955164 at *4 (E.D.N.Y 2003) (applying Fourteenth Amendment standard to denial of proper medical care while in police custody)

To prevail on a claim that one's constitutional rights were violated due to denial of medical care, the plaintiff must demonstrate: (1) that an official denied him treatment needed to remedy a serious medical condition; and (2) that the official did so because of his deliberate indifference to that need. See Mills, 216 Fed. Appx. at 10. Factors to be considered in determining whether a condition is serious enough include: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the

existence of chronic and substantial pain". *Id*. The plaintiff must also show that the defendants acted with reckless disregard for the substantial risk posed by plaintiff's serious medical condition which also requires an analysis of what the defendants knew or should have known. *See* Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002). Deliberate indifference to a detainee's serious medical needs is actionable under §1983 if the plaintiff can prove that his inadequate medical care was more than merely negligent. *See* Nance v. New York City Police Dept. ex rel. McKay Chung, 2003 WL 1955164 at *4 (E.D.N.Y. 2003). Some factors that courts have used in determining police officer liability include when the detainee requested medical care and whether there was a clear manifestation of illness or injury necessitating medical intervention. *See* Cooper v. City of Hartford, 2009 WL 2163127 (D. Conn. 2006) (where court found that officers were deliberately indifferent to the medical needs of a gunshot victim who repeatedly asked for medical care); Weyant v. Okst, 101 F3d 845, 857 (2d Cir 1996) (finding deliberate indifference where [detainee] was pale, dizzy, perspiring profusely, trembling uncontrollably, hardly able to talk, and repeatedly losing consciousness; and that [the officer] was informed that [the detainee] was in insulin shock).

In this case, as previously discussed, Bradway not only appeared to be free from any distress from the point of his arrest to the point where he was transported to the hospital, but he repeatedly told the arresting officers that he felt fine and that he did not want to go to the hospital. *Cf.* Cooper v. City of Hartford, 2009 WL 2163127 (D. Conn. 2006) (plaintiff had obvious gunshot wound and repeatedly asked to be taken to the hospital). Certainly, even assuming *arguendo* that Bradway was suffering from a serious medical condition at the time of the arrest, the defendants cannot be charged with knowing the exact amount, if any, of cocaine that Bradway ingested shortly after his arrest, nor can they be found to have recklessly

disregarded the potential risk posed by such ingestion. As Officer Sickles testified, the officers witnessed Bradway spitting out the cocaine and Bradway never admitted to any ingestion, therefore it was certainly plausible that he did not ingest any cocaine at that time. (Exhibit "F", pp. 77:17-25; 78:2). Additionally, at the time of his arrest, Bradway repeatedly told the defendants that he was fine and did not want to go to the hospital. Arresting Officer Sickles recalled the plaintiff refusing to go to the hospital because he was fine. (Exhibit "F", p. 79:16-20). This was clearly not a case where Bradway was relying on the officers to transport him to the hospital because of a serious medical condition.[2]

Furthermore, the officers in this matter certainly cannot be found to have been deliberately indifferent to Bradway's medical needs. As the record clearly establishes, it was the arresting officers who attempted to prevent Bradway from ingesting the cocaine in the first place. Further, at the first sign that Bradway could potentially experience adverse effects from a narcotic due to his contrary answers regarding the amount swallowed, he was transported to the hospital. *Cf*. Weyant v Okst, 101 F3d 845, 857 (2d Cir 1996). Specifically, Sgt. Kiernan testified that it was during the booking process where he first noticed that Bradway was giving inconsistent answers and therefore ordered him to be taken to the hospital. (Exhibit "J", p. 34:2-10). Clearly, the officers were not deliberately indifferent to Bradway's medical needs and therefore did not deny him medical care.

**B. Unlawful Search and Seizure**

Plaintiff cannot state a valid Fourth Amendment claim for unreasonable search and seizure. Initially, any remedy to plaintiff for an alleged unlawful search would come at the

---

[2] It is worth noting that there are cases where police officers have been sued under involuntary hospitalization claims where the plaintiff did not consent to transport to the hospital. See e.g. Nogbou v. Mayrose, 400 Fed. Appx. 617 (2d. Cir. 2010). As in the instant matter where an arrestee professes to be fine and does not consent to being transported to the hospital, officers are faced with the potential for suit regardless of their decision.

criminal level, and if the search was deemed unlawful, the evidence seized would be excluded under the "fruit of the poisonous tree" doctrine, which solely applies in the context of criminal procedure. <u>Pennsylvania Bd. of Probation & Parole v. Scott</u>, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). However, the fruit of the poisonous tree doctrine does not extend to §1983 actions. <u>U.S. v. Calandra</u>, 414 U.S. 338, 348 (1973). The Court of Appeals concluded that victims of unreasonable searches and seizures "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." <u>Townes v. City of New York</u>, 176 F.3d 138, 148 (2d Cir. 1998); <u>Feurtado v. Gillespie</u>, 2005 WL 3088327 (E.D.N.Y. 2005).

Furthermore, plaintiff has not stated nor offered any evidence as to what specific conduct by the defendants constituted an unreasonable search and/or seizure. When Officer Sickles first encountered Bradway it was in furtherance of a lawful rape investigation which occurred the previous night at the house in which Bradway was staying. (Exhibit "F", p. 46:14-25). Officer Sickles observed, on the couch where Bradway was sitting, a knotted plastic bag which contained, what was believed to be and, in fact was, crack cocaine. (Exhibit "F", pp. 56:22-25; 57:2). Accordingly, the contraband was lawfully seized, Bradway was arrested and Bradway was searched incident to the lawful arrest. Such conduct was well within the officers' rights and did not constitute an unlawful search or seizure. *See e.g.* <u>Texas v. Brown</u>, 460 U.S. 730, 739, 103 S. Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (holding that while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately).

### C. Freedom from compelled self – incrimination

Plaintiff did not suffer a constitutional violation of his right to be free from self-incrimination because there was no criminal trial in the instant action. The Fifth Amendment

requires that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." Chavez v. Martinez, 538 U.S. 760, 766, 123 S.Ct. 1994, 2000, 155 L.Ed.2d 984 (2003). This right is a fundamental trial right of criminal defendants to be free from statements compelled by police interrogations at trial. *See* Brown v. Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 80 L.Ed.2d 682 (1936). However, while conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial. Chavez v. Martinez, 538 US 760, 767, 123 S.Ct. 1994, 2001, 155 L.Ed.2d 984 (2003) *citing* United States v. Verdugo-Urquidez, 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990).

Due to Bradway's death there was no criminal trial related to the subject incident and therefore there was no violation of Bradway's constitutional right to be free from self-incrimination. Accordingly, plaintiff's claim should be dismissed.

**D. The individual officers are entitled to qualified immunity**

The doctrine of qualified immunity shields police officers from liability for damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known", Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or where it was objectively reasonable for them to believe that their acts did not violate those rights. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed. 523 (1987); Malley v. Briggs, 475 U.S. 334, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The defense of qualified immunity shields government officials from liability for civil damages as a result of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits. McClean v. City of New York, 12 N.Y.3d 194, 202 (2009); Ryan v. Department of Social Services, 16 Misc.3d 1134(A), 847 N.Y.S.2d 904 (N.Y. Sup. 2007), *quoting* Haddock v. New York, 75 N.Y.2d at 484. This doctrine

was established to eliminate the fear of personal monetary liability and to prevent harassing litigation which would "unduly inhibit officials from the discharge of their duties." Harlow, supra, 457 U.S. at 814, 102 S.Ct. at 2736. As the aforementioned facts demonstrate, the qualified immunity doctrine applies in this case because each of the individual defendant's actions were objectively reasonable and did not violate plaintiff's constitutional rights.

**E. Former Town Supervisor Linda Kabot cannot be held individually liable as she was not personally involved in any of the alleged unconstitutional conduct and henceforth such claims against her in her official capacity are redundant.**

While plaintiff's Amended Complaint seeks redress from former Town Supervisor Linda Kabot in both her individual and official capacity, it makes no specific allegations of misconduct by Ms. Kabot. When monetary damages are sought pursuant to Section 1983, supervisory officials may only be held liable for constitutional violations when they were personally involved in unconstitutional conduct. *See* Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994). Personal involvement may be shown where the supervisor: (1) directly participated in the violation; (2) failed to remedy the violation after it was brought to his attention; (3) created or fostered a policy or custom wherein such violations occurred; (4) was grossly negligent in supervising subordinates who committed the violation; or (5) showed deliberate indifference to the rights of others by failing to act on information that constitutional violations were occurring. *See e.g.* Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007). Due to the absence of any allegations of Ms. Kabot's personal involvement in the instant action or her involvement in the creation or fostering of a policy resulting in the alleged constitutional violations, it is clear that Ms. Kabot cannot be held individually liable for any of the claims asserted in the instant complaint.

Furthermore, the claims asserted against Ms. Kabot in her official capacity as Town Supervisor are redundant and duplicative of the claims asserted against the Town and must be

dismissed. *See* <u>Amato v. City of Saratoga Springs</u>, 170 F.3d 311 (2d Cir. 1999); <u>Delong v. Soufiane</u>, 2010 WL 234781 (E.D.N.Y. 2010).

**POINT II**

**PLAINTIFF'S NOTICE OF CLAIM FAILS TO IDENTIFY VARIOUS STATELAW CLAIMS ALLEGED IN THE FEDERAL COMPLAINT AND THEREFORE MUST BE DISMISSED**

It is well settled that a claimant may not raise in the complaint causes of action or legal theories that were not directly or indirectly mentioned in the notice of claim and that change the nature of the earlier claim or assert a new one. <u>Moore v. County of Rockland</u>, 192 A.D.2d 1021, 596 N.Y.S.2d 908 (3d Dept. 1993); <u>Demorcy v. City of New York</u>, 137 A.D.2d 650, 524 N.Y.S.2d 742 (2d Dept. 1988).

Moreover, new substantive allegations are not within the purview of General Municipal Law Sec. 50-e(6), governing permissible corrections to a notice of claim. <u>White v. New York City Housing Authority</u>, 288 A.D.2d 150, 734 N.Y.S.2d 11 (1st Dept. 2001); <u>Herron v. City of New York</u>, 223 A.D.2d 676, 637 N.Y.S.2d 438 (2d Dept. 1996); <u>Demorcy v. City of New York</u>. A plaintiff is not permitted to change the theory of causation alleged in the notice of claim. <u>Torres v. New York City Housing Authority</u>, 261 A.D.2d 273, 690 N.Y.S.2d 257 (1st Dept. 1999); *see also* <u>Chieffet v. New York City Transit Authority</u>, 10 A.D.3d 526, 782 N.Y.S.2d 56 (1st Dept. 2004). Thus, it is well established that a theory of liability not mentioned in the notice of claim generally may not be asserted in a subsequent lawsuit. <u>Bryant v. City of New York</u>, 188 A.D.2d 445, 446, 590 N.Y.S.2d 913 (2d Dept. 1992); <u>Demorcy v. City of New York</u>, *supra*.

The foregoing fundamental principles of law mandate that plaintiff's claims of negligent supervision/training/hiring contained within the federal complaint be dismissed. Specifically, plaintiff's notice of claim states that Town of Southampton and the Police Department

committed the following offenses against Bradway, including Gross Negligence. (See Plaintiff's notice of claim, dated August 14, 2008, attached hereto as Exhibit "O"). However, the notice of claim makes no reference to claims sounding in negligent hiring/retentions or supervision.

The notice of claim does not mention negligent supervision, hiring or retention. Specifically, the notice of claim does not identify the time, place or manner in which the claim of negligent supervision or negligent hiring and retention took place. Urena v. City of New York, 221 A.D.2d 429, 633 N.Y.S.2d 391 (2d Dept. 1995). It does not refer to any facts regarding the Town or the Police Department's policies or procedures for hiring or supervising employees. The notice of claim does not identify any facts demonstrating which employees, if any, were improperly or negligently supervised. The notice of claim does not identify how the Town or the Police Department were negligent in their hiring or supervision. The notice of claims does not identify any individual or individuals who were not properly supervised. *See e.g.* Santoro v. Town of Smithtown, 40 A.D.3d 736, 835 N.Y.S.2d 658 (2d Dept. 2007). The notice of claim does not contain any factual allegations concerning negligent hiring or supervision or a factual predicate for the claim. *See* Rollins v. New York City Bd. of Educ., 68 A.D.3d 540, 889 N.Y.S.2d 456 (1st Dept. 2009). Accordingly, plaintiffs' claims of negligent supervision, hiring, retention and training should be dismissed as plaintiffs' generic negligence claim does not give notice to the defendant that it was negligent in its hiring, retention, supervision or training. *See* DeJesus v. New York City Housing Authority, 46 A.D.3d 474, 848 N.Y.S.2d 641 (1st Dept. 2007).

To the extent that plaintiff's complaint alleges claims against the individual defendants in their individual capacity[3], those claims should be dismissed as well. The plaintiff's notice of claim fails to direct their claim to any of these individuals or otherwise notify them that they were the intended subjects of the impending litigation. Specifically, the notice of claim makes absolutely no mention of defendants Kabot, James Kiernan, Sickles, Cagno, Frankenbach, Peters, William Kiernan or Montalbano. It is axiomatic that a notice of claim listing the individual employees is required for suits brought against a municipal employee in instances where the municipality is obligated by law to indemnify such employee. *See* N.Y. Gen. Mun. Law § 50-e(1)(b).

Further, it is well-settled that state or town officials can only be held personally answerable in damages to plaintiff if they "knew or reasonably should have known that the action they took within the sphere of official responsibility would violate plaintiffs' constitutional rights or if they took action with malicious intention to cause a deprivation of constitutional rights or other injury to the plaintiff." <u>Swift v. Toia</u>, 450 F. Supp. 983 (S.D.N.Y. 1978). There is no evidence demonstrating that each individual defendant knowingly, deliberately and/or maliciously acted to cause a deprivation of the plaintiffs' rights. Indeed, many of these individuals are merely named as links in the chain of command and had no involvement with the underlying events.

Where the notice of claim fails to complain about the action or inaction of a particular employee and/or fails to set forth a theory for imposing individual liability on that employee, the municipality has no basis for investigating whether or not the claimant has a valid claim against

---

[3] It is not clear, based upon a reading of the complaint, whether plaintiff intends to allege claims against the individually named police officers in their individual capacities. The only defendant who is expressly alleged to be sued in both an individual and official capacity is Linda Kabot. (See Plaintiff's Amended Complaint, dated October 30, 2009, attached hereto as Exhibit "A").

that employee. Thus, permitting plaintiffs to prosecute causes of action against individuals who were not named in their notice of claim is contrary both to the letter and the purpose of the statute. <u>Rattner v. Planning Com'n of Vil. of Pleasantville</u>, 156 A.D.2d 521, 526 (2d Dept 1989); <u>White v. Averill Park Cent. School Dist.</u>, 195 Misc.2d. 409, 411-12 (Sup. Ct. 2003).

## POINT III

## PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE DISMISSED

### a. Officers' Negligence

As stated, since plaintiff's notice of claim makes no mention of the individual officers, or set forth a theory for imposing individual liability on any of the officers mentioned, any claim of negligence against the officers' warrants dismissal. Notwithstanding, the actions of the officers were discretionary and they therefore cannot be held liable for any alleged negligence.

There are numerous provisions within the Town of Southampton Police General Orders which govern the transportation of arrestees to police headquarters and/or the hospital. Specifically, Town of Southampton Police Department General Order §3-97 requires that when a prisoner is in custody he will be transported directly to the booking facility. The policy further dictates that when an officer becomes aware that a prisoner is injured or sick, at any time prior to, during or after the arrest of an individual, the officer will immediately seek attention. Ultimately however, the decision of whether to transport an arrestee directly to the hospital or to police headquarters is discretionary, requiring the officers involved to use their knowledge of the events, observations, experience, and arrestee complaints to determine the proper course of action. Exhibit "J", at pp. 29:22-24; 30:2-4 (stating not every person who is arrested that is believed to have ingested a narcotic is brought to the hospital but rather only if that person is in distress).

In the instant matter, there was no indication that Bradway was injured or sick when he was arrested. Specifically, after Bradway had spit out the bag of cocaine he was chewing, he told Officer Peters that he "swallowed a lot more than that [and] he just wanted to get high before [he] was taken to jail, [but he] was fine and didn't want to go to the hospital". *See* Deposition Transcript of Officer David Peters, attached hereto as Exhibit "P", p. 47:2-5; Exhibit "E", p. 31:18-20 ("I remember him being very adamant that he felt fine and he did not want to go to the hospital"). Furthermore, it was unclear whether Bradway had actually swallowed cocaine during his arrest. Police Officer Eric Sickles, who assisted in the arrest of Bradway, testified that after he spit out the remaining cocaine, he never told the officer that he succeeded in swallowing any of it. (Exhibit "F", pp. 77:17-25; 78:2.

Given the circumstances of the instant matter, where it was not clear whether Bradway had actually ingested cocaine and where Bradway stated he was feeling fine and did not want to go to the hospital, the officers in their discretion decided to transport Bradway to police headquarters. Accordingly, the individual officers cannot be found negligent with regard to this discretionary decision. McClean v. City of New York, 12 N.Y.3d 194, 202 (2009).

**b. Town's Negligence**

When police take physical custody of an individual, that person is owed a duty of care to protect their health and safety. *See e.g.* Sanchez v. State, 99 N.Y.2d. 247, 754 N.Y.S.2d 621 (2002); Gordon v. City of New York, 120 A.D.2d 562, 502 N.Y.S.2d 215 (2d Dept. 1986). This duty, which applies to state prisoners, pretrial detainees and individuals housed in county jails, includes the duty to maintain the premises in reasonable safe conditions under the circumstances. Jones v. Rensselear, 51 A.D.3d 1073, 856 N.Y.S.2d 717 (3d Dept. 2008). The scope of this duty

is the standard formulation that "the risk reasonably to be perceived defines the duty to be obeyed". <u>Gordon</u>, 120 A.D.2d at 563 *citing* <u>Palsgraf v. Long Island R.R. Co</u>., 248 N.Y. 339, 344.

It is respectfully submitted that as a matter of law, the actions taken with regard to Bradway were entirely reasonable. First, as was discussed above, it was not only unclear whether or not Bradway had actually ingested cocaine, but several police officers testified that Bradway repeatedly told the officers that he felt fine and did not want to go to the hospital. Further, the officers testified that Bradway appeared fine and was not in distress. This fact was supported by the statement of Bradway's purported girlfriend, Danielle Giannini, who stated that when she asked him how he was when she later saw him at police headquarters, Bradway stated that everything was ok. (*See* Giannini statement, dated June 12, 2008, attached hereto as Exhibit "Q"). Accordingly no duty owed to Bradway was breached by defendant as its actions were objectively reasonable.

Furthermore, plaintiff is unable to establish that defendants' actions were the proximate cause of Bradway's death. The Suffolk County Medical Examiner's Office conducted an autopsy of Bradway and ultimately found that the cause of death was seizures and multiple systems failure due to acute cocaine intoxication". (See Office of the Medical Examiner, Report of Autopsy, dated June 10, 2008, attached hereto as Exhibit "R"). The autopsy report found no evidence of "blunt impact injury" or that the use of the Taser played a factor in Bradway's death. (Exhibit R). Further, any attempt by the plaintiff to allege that it was defendants' failure to timely bring Bradway to the hospital falls short when aligned with the medical knowledge of cocaine intoxication offered by former Suffolk County Chief Medical Examiner Charles Wetli. Specifically, Dr. Wetli, concluded that the hour and a half gap between when Bradway was first arrested and when he was transported to the hospital did not impact the ultimate demise of

Bradway. (*See* Deposition Transcript of Charles Wetli, attached hereto as Exhibit "S", p.8:3-7; p.38:16-22).

Accordingly, the actions of the defendants were not unreasonable in the given circumstances, nor were they a contributing factor to Bradway's untimely death and plaintiff's claim for negligence should be dismissed.

### c. Negligent Hiring/ Retention/Training

Even assuming arguendo, that plaintiffs negligent hiring/retention and negligent supervision/training/instruction claims are considered on the merits, such claims should be dismissed.

Plaintiff's Amended Complaint states that "defendant Town is responsible for its employees' actions under the doctrine of *respondeat superior*". (Exhibit "A", at ¶37). Plaintiff also claims that defendant Town "failed to provide adequate training, supervision, and control of defendant town's agents". (Exhibit "A" at ¶67). However, the cause of action of negligent training and supervision does not lie, where, as here, the employee is acting within the scope of his or her employment, thereby rendering the employer liable for damages caused by the employee's negligence under the alternative theory of *respondeat superior*. *See* Segal v. St. John's University, 69 A.D.3d 702, 893 N.Y.S.2d 221 (2d Dept. 2010). Said differently, "where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of *respondeat superior*, no claim may proceed against the employer for negligent hiring or retention." *See* Karoon v. New York City Transit Authority, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27 (1st Dept.1997). This rule has been applied in police conduct cases. *See* Ashley v. City of New York, 7 A.D.3d 742, 743, 779 N.Y.S.2d 502 (2d Dept. 2004); Diaz v. City of New York, 2006 WL

3833164 at *10, (E.D.N.Y. 2006). The rule results from the logic that "if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training." *See* <u>Karoon v. New York City Transit Authority</u>, 241 A.D.2d at 324. Therefore, plaintiff's negligent hiring/training/ retention claim should be dismissed.

Of course, as was demonstrated above the defendants' actions were reasonable and not negligent. Nevertheless, plaintiff has failed to introduce any evidence to substantiate its claims that any of the officers were negligently hired, retained or supervised. A necessary element for an action for negligent hiring, retention or supervision is that the employer knew or should have known of the employee's propensity for the conduct that caused the alleged injury. <u>C.M. v. City of New York</u>, 9 Misc.3d 251, 800 N.Y.S.2d 898 (New York Sup. 2005). However, there is no governmental liability for misjudgment in hiring a police officer. <u>Mon v. New York</u>, 78 N.Y.S.2d 309, 574 N.Y.S.2d 529 (1991). As plaintiff has offered no evidence that the Town had any knowledge of any propensities of any of the named defendants, or that any of the named defendants in fact had prior instances in anyway related to the instant claim, these claims should be dismissed. <u>Daniels v. Loizzo</u>, 174 FRD 295, 299 (S.D.N.Y. 1997).

Furthermore, the hiring, training, discipline and retention of Town of Southampton Police Department employees are discretionary functions performed by Chief Overton. When official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant is generally not answerable in damages for the injurious consequences of that action. <u>Tango v. Tulevech</u>, 61 N.Y.2d 34, 40, 471 N.Y.S.2d 73, 76, 459 N.E.2d 182 (1983).

In <u>Mon</u>, plaintiff brought a suit against the city based upon negligent hiring of a city police officer who wrongly shot and injured the plaintiff. The Court of Appeals held that the negligent hiring causes of action should have been dismissed as a matter of law because the hiring resulted from the exercise of discretion. <u>Mon</u>, <u>supra</u>, 78 N.Y.2d at 313, 574 N.Y.S.2d at 531. *See also* <u>Gauthier v. Town of Bethlehem, New York</u>, 1993 WL 489684 (N.D.N.Y. 1993) (summary judgment awarded to municipal defendants involved in the hiring process); <u>Hiller v. County of Suffolk</u>, 81 F.Supp.2d 420 (E.D.N.Y. 2000)(County Executive and Police Commissioner entitled to qualified immunity with regard to their decisions to formulate and implement an affirmative action plan.).

In the instant case, Chief Overton was required to utilize discretion with regard to hiring, training, disciplinary and retaining village police personnel. Accordingly, this claim should be dismissed in its entirety.

<u>**POINT IV**</u>

<u>**THE PLAINTIFF HAS NOT ESTABLISHED THAT BRADWAY'S DEATH WAS CAUSED BY THE CONDUCT OF THE DEFENDANTS**</u>

To establish a wrongful death cause of action plaintiff must show that there was: (1) a death; (2) caused by the wrongful conduct or default of the defendant; (3) giving rise to a cause of action which could have been maintained, at the moment of death, by decedent if death had not ensued; (4) survival by distributes who have suffered pecuniary loss by reason of death; and (5) appointment of a personal representative of decedent. Estates Power and Trusts Law §5-4.1; <u>Chong v. New York City Transit Authority</u>, 83 A.D.2d 546, 441 N.Y.S.2d 24 (2d Dept. 1981). To succeed on a cause of action to recover damages for wrongful death, Bradway's personal representative must establish, inter alia, that the defendant's wrongful act, neglect, or default caused

his death." <u>Eberts v. Makarczuk</u>, 52 A.D.3d 772, 861 N.Y.S.2d 731, 732 (2008); <u>Dineen ex rel.</u>
<u>Dineen v. Stramka</u>, 228 F.Supp.2d 447, 454 (S.D.N.Y.2002).

Plaintiff has not established the requisite causation to link defendants' actions with Bradway's untimely death and therefore the wrongful death cause of action should be dismissed. <u>Nealy v. U.S. Surgical Corp.</u>, 587 F.Supp.2d 579, 585 (S.D.N.Y. 2008) (holding that plaintiff's wrongful death claim must be dismissed because he has failed to allege a sufficient causal or proximate nexus between any action by the defendant and the death of [decedent]). Plaintiff's Complaint alleges that the defendants' 'tasering' of Bradway and refusal to provide necessary medical treatment resulted in his death. As was detailed earlier in defendants' negligence argument, the evidentiary record is absent of anything to substantiate this claim. Further, plaintiff has failed to establish any causal link between defendants' actions and Bradway's death. In fact, he was taken to the hospital within an hour and a half of his arrest and was not treated for any medical issues until nearly three and one half hours after his admission. (Exhibit "L")

As mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment, <u>Cifarelli</u>, 93 F.3d 47, 51 (2d Cir. 1996), and statements that are devoid of any specifics, but replete with conclusions, are insufficient to defect a properly supported motion for summary judgment. <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 452 (2d Cir. 1999), plaintiff's wrongful death cause of action warrants dismissal. *See* <u>Lenti v. Cohen</u>, 16 NY2d 796, 262 NYS2d 961 (1965) (even applying <u>Noseworthy v. City of New York</u>, 298 N.Y. 76 (1948) rule; dismissal of complaint is proper when a prima facie case has not been made out); <u>Rucker v.</u>
<u>Fifth Ave. Coach Lines, Inc.</u>, 15 N.Y.2d 516, 254 N.Y.S.2d 97 (1965).

## <u>CONCLUSION</u>

In conclusion, it is respectfully requested for the reasons stated hereinabove, the court grant summary judgment in favor of the defendants dismissing the various causes of actions as articulated herein.

Dated: Smithtown, New York
      June 6, 2011

                             Respectfully submitted,

                             DEVITT SPELLMAN BARRETT, LLP

                             By: _____/S/_____
                                    Joshua S. Shteierman (JS/1954)
                                    Attorneys for Defendants
                                    50 Route 111
                                    Smithtown, New York 11787
                                    (631) 724-8833

TO:    RUSKIN MOSCOU FALTISCHEK, P.C.
        Attorneys for Plaintiff
        1425 RXR Plaza
        East Tower, 15th Floor
        Uniondale, New York 11556
        (516) 663-6600