UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
Tina Bradway, Individually and as Administratrix of
the Estate of Tony Bradway,

                    Plaintiff,          <u>Rule 56.1 Statement</u>
                                            Case No. CV -09-3177

- against –

THE TOWN OF SOUTHAMPTON, LINDA A.
KABOT, OFFICER JAMES KIERNAN, OFFICER
ERIC SICKLES, OFFICER VINCENT CAGNO,
OFFICER STEVE FRANKENBACH, OFFICER
DAVID PETERS, OFFICER WILLIAM KIERNAN
and OFFICER MONTALBANO,

                    Defendants.
------------------------------------------------------------------------X

      Defendants THE TOWN OF SOUTHAMPTON, LINDA A. KABOT, OFFICER JAMES KIERNAN, OFFICER ERIC SICKLES, OFFICER VINCENT CAGNO, OFFICER STEVE FRANKENBACH, OFFICER DAVID PETERS, OFFICER WILLIAM KIERNAN and OFFICER MONTALBANO, as and for their Statement Pursuant to Rule 56.1 of the Rules of this Court, state as follows:

      1.     Plaintiff's action herein, as set forth within the Amended Complaint, is brought pursuant to 42 U.S.C. §1983 and asserts various state law causes of actions. (Amended Complaint, Exhibit "A").[1]

      2.     On June 9, 2008, Officers Steven Frakenbach, Vincent Cagno, and Eric Sickles were assigned to secure the residence located at 18 Greenfield Road, Southampton, New York, for a felony investigation. (Supplementary Report of Officer Sickles, Frankenbach and Cagno, Exhibit "C").

---

[1] All exhibits are appended to the Declaration of Joshua S. Shteierman in support of the motion.

3. Kenneth Bo, the owner of the residence consented to the Officers' presence and to any search they deemed necessary. (Supplementary Report of Kenneth Bo, Exhibit "D").

4. At approximately 0940 hours, while at the residence owned by Kenneth Bo, Officer Frankenbach observed a woman, Danielle Giannini, sleeping on the living room couch on the first floor with a "crack pipe" in her hand. (Frankenbach deposition, Exhibit "E", p. 16:5-10).

5. Officer Frankenbach alerted Officer Sickles to this fact and Officer Sickles woke Ms. Giannini up, placed her in handcuffs and escorted her to the dining room table where she had a seat. (Sickles Deposition, Exhibit "F", p. 53:2-5).

6. As Officer Cagno was escorting Ms. Giannini into the dining room, Tony Bradway, who was also asleep in the living room, awoke and he was also escorted into the dining room. (Exhibit "F", p. 55:20-23).

7. On the couch, where Bradway was sitting, Officer Sickles observed a "knotted plastic baggy" containing a white powder which appeared to be, and was later confirmed to be, crack cocaine. (Exhibit "F", p. 56:23-25).

8. Officer Cagno placed Bradway in handcuffs. Cagno Deposition, (Exhibit "G", p. 32:23).

9. Officer Cagno observed Bradway wipe his mouth directly on his pant leg and noticed a white residue; he then observed Bradway chewing on something. (Exhibit "G", p. 38:9-12).

10. Officer Cagno immediately commanded Bradway to spit out whatever it was he was chewing on. (Exhibit "G", p. 38:9-12).

11. After Bradway refused to comply with Officer Cagno's commands, Officer Cagno placed his left hand behind Bradway's head and his right hand under his chin in an attempt to prevent him from swallowing. (Exhibit "G", p. 38:17-21).

12. Officer Sickles informed Bradway that if he did not comply he would be 'tased'. (Exhibit "F", p. 66:14-18).

13. Bradway continued to disregard the commands of the officers and Officer Sickles, certified in the use of the TASER, deployed the TASER while it was in drive-stun mode. (Exhibit "F", p. 66:24-25; Sickles TASER Certification, Exhibit "H").

14. In response, Bradway spit out a plastic bag onto the table in front of him but continued to chew. (Exhibit "F", p. 68: 7-10).

15. Bradway was again advised to spit out whatever it was he was chewing on, or he would be 'tased'. (Exhibit "F", p. 68: 7-10). Bradway again refused to comply and in fact began to chew more vigorously, at which point Officer Sickles used the TASER and drive-stunned Bradway a second time. (Exhibit "F" p. 68: 21-23).

16. As a result, Bradway then spit out a white substance onto the table where he was seated. (Exhibit "F", pp. 68: 21-23; 69:2-3).

17. Officer Sickles radioed his direct supervisor, Sgt. James Kiernan to advise him as to what had just occurred. (Exhibit "F", p. 73:3-8).

18. Sgt. Kiernan asked what condition Bradway was in and when he was informed that he appeared fine and not in any distress, he directed that Bradway be brought to police headquarters. (Exhibit "F", p. 73:11-13).

19. As Officer Sickles was escorting Bradway to the patrol car, Bradway stated that he felt fine and did not want to go to the hospital because his family worked there. (Exhibit "F", p. 79:16-20).

20. Officer William Kiernan transported Bradway to police headquarters and recalled that Bradway appeared to be in normal condition. (W. Kiernan Deposition, Exhibit "I", p. 32:2-14).

21. When Bradway arrived at police headquarters at approximately 10:45, Sgt. James Kiernan conducted his arrest processing. (J. Kiernan Deposition, Exhibit "J", p. 33:4-7; Southampton Police Arrest Report, Exhibit "K").

22. Sgt. Kiernan took Bradway's pedigree information, name, date of birth, address, relatives, etc. and recalls Bradway initially appeared to be in normal physical and mental condition and not under the influence of any narcotic. (J. Kiernan Deposition, Exhibit "J", p. 33:3-25).

23. As Sgt. Kiernan's conversation with Bradway progressed, he began to notice that Bradway was giving inconsistent answers. (J. Kiernan Deposition, Exhibit "J", p. 34:2-5). Accordingly, Sgt. Kiernan made a decision to transport Bradway to the hospital. (J. Kiernan Deposition, Exhibit "J", p. 34:2-5).

24. Bradway initially protested stating that he did not want to go to the hospital and it was his right not to go, but he eventually complied. (J. Kiernan Deposition, Exhibit "J", p. 36:13-25).

25. Bradway was admitted to Peconic Bay Medical Center at 12:04 hours. (See Peconic Bay Medical Center, Emergency Nursing Record, Exhibit "L"). Upon his arrival, Bradway informed the triage nurse that he had ingested (4) four to (5) five grams of cocaine seven hours earlier in an attempt to get high and that he ingests 10 grams of cocaine daily. (See Peconic Bay Medical Center, Emergency Nursing Record, Exhibit "L").

26. The initial assessment of Bradway taken at 1400 hours, two hours after admission, indicated that while Bradway was agitated and uncooperative and had an elevated heart rate, he appeared well, was not in respiratory distress, was oriented, and had no evidence of trauma. (See Peconic Bay Medical Center, Emergency Nursing Record, Exhibit "L").

27. At approximately 1545, 3 hours and 45 minutes following admission, doctors for the first time made note of Bradway experiencing "seizure activity". (See Peconic Bay Medical Center, Progress Notes, Exhibit "M").

28. At approximately 1815, Bradway was transferred to the ICU for treatment of acute respiratory failure secondary to acute cocaine intoxication. (See Peconic Bay Medical Center, Progress Notes, Exhibit "M").

29. At approximately 1853 a code blue was called when no electrical current was detected in Bradway's heart and he was pronounced dead at 1913. (See Peconic Bay Medical Center, Progress Notes, Exhibit "M").

30. On May 20, 2011, plaintiff filed a Stipulation Voluntarily Dismissing the claims of excessive force under the 4th Amendment; all claims brought pursuant to the New York State Constitution; claims brought pursuant to the equal protection clause; as well as the state law claims sounding in conspiracy, assault, battery, intentional infliction of emotional distress and malicious abuse of process. (See Stipulation of Voluntary Dismissal, dated May 20, 2001, Exhibit "N").

Dated:     Smithtown, New York
              June 6, 2011

                              Respectfully submitted,

                              DEVITT SPELLMAN BARRETT, LLP
                              Attorneys for Defendant
                              50 Route 111
                              Smithtown, New York 11787
                              (631) 724-8833

                              By: _____/S/_____
                                    JOSHUA S. SHTEIERMAN (JS 1954)

TO:    RUSKIN MOSCOU FALTISCHEK, P.C.
        Attorneys for Plaintiff
        1425 RXR Plaza
        East Tower, 15th Floor
        Uniondale, New York 11556
        (516) 663-6600